Good morning, Your Honor. May it please the Court, I'm Alice McClaire, assistant federal defender on behalf of the appellant, Mary Elizabeth Stroder. I'll accept your five minutes for rebuttal, and I'd like to focus this morning on the due process issue involving the joint trial. Liz Stroder was tried together with her co-defendant, Charles Roundtree, for the kidnapping, robbery, and murder of Diana Contreras. Mr. Roundtree admitted the shooting. He fully confessed, and the jury heard through a detective's testimony his admission that he abducted the young woman from a shopping mall, forced her to surrender her ATM card, forced her to dispose of the pins, then transported her to an oil field where he shot her and left her dead body. Now, the evidence against my client was that she had left Missouri a few days prior with Roundtree. Nothing about the mall. There was a footprint indicating that she was present at the oil field where the victim was shot, and I can see there was ample evidence that she acted as an accessory after the fact. The key piece of evidence against my client was the fact, the status, if you will, of her relationship with Mr. Roundtree. That relationship was the key to the aiding and abetting theory, and it was because of that that drawing the two together permitted the State to attribute Roundtree's act to Ms. The District Attorney, in closing argument, said as follows, and this is a direct quote. Can I ask a question? We do not, and I collect that the transcript of the original trial is not in the record in the district court? No, that's not correct, Your Honor. The transcript was lodged below. I'm not sure we have it. And there are numerous volumes. Wadeer takes up almost as long as the trial itself, and of course, because it was a capital case with two defendants, we have the penalty phase excerpt as well. And the question that Judge Berzon asked, is this one of those situations where the exhibits got returned to the parties after the trial? If the transcript didn't get to us, was it returned to the State, perhaps? I can't answer that question, Your Honor. I thought it was still part of the district court record. Certainly, I inherited credits at their counsel file, which included those that had been brought to them and assumed that they were in the district court record. Again, to quote from the DA's closing argument, the evidence shows that Mary Elizabeth Schroeder was intimately involved in these crimes. She was intimately involved with Mr. Roundtree. Obviously, he's not going to do this without discussing it with her, and obviously, he was involved. It's obvious that he is guilty. I submit to you that both the trial, if you proceed on the theory that Liz Schroeder was guilty by virtue of her relationship with Mr. Roundtree, which proves that she was guilty perhaps of first-degree bad choice of boyfriends, but it does not support a conviction for first-degree murder beyond a reasonable doubt. Wait a minute. Right now, we're dealing with a case in which there hasn't been a COI issued on the efficiency case. And you're arguing in two parts this argument about the omission of his evidence, of his confession. I'm glad you raised precisely that point, Your Honor, because the due process issue is about the fundamental fairness of a joint trial. His confession is part of that, but the claims have never been limited to Roundtree's confession. Our argument has always been, since the instigation of Octavia's case, that by trying Liz Schroeder together with Charles Roundtree, she was denied a fair trial because of the combination of the weak state of evidence against her, his full confession, and the prosecutor's use of the relationship between the two without any objective evidence as to its nature, the degree of voluntariness of Ms. Schroeder's participation in the relationship, et cetera, to link them. This is not a confrontation clause claim. Both the Fifth District Court of Appeal, the District Court, and Octavia in their briefing have analyzed this as if the primary issue was direct implication of Ms. Schroeder by Roundtree's confession. That would be a Bruton claim, a claim of confrontation clause violation. And we've always acknowledged that the confession was redacted pursuant to Richardson v. Marsh in such a way that it removed all reference to her. So there was no confrontation clause violation. I submit that nonetheless, the she was with him. She even married him after the fact. Therefore, she must have participated. In the absence of any evidence, even circumstantial evidence... And how is that different in a non-joint trial? Why couldn't they have put all that in a non-joint trial? Except the confession being different, but everything else, why not? Well, the confession, again, is the biggest part of the case, simply as it establishes the fact of what happened to the victim. Avelino suggested that perhaps that statement might have come in at a separate trial if there was ever any question about that. It's been laid to rest by the Supreme Court's very recent decision in Crawford v. Washington, the extrajudicial statement to police by a defendant's spouse. And I, from your case, really have to come back to the introduction of the confession because without it, everything else could have gone on in another trial. And without it, it would have been insufficient. If she had been tried by herself, the evidence would have shown that on December 3rd, 1995, she disappeared from her father's home in Missouri, that on December 9th, Ms. Contreras disappeared from a mall in Bakersfield, and that her dead body was found two days later. There was a footprint linked to Ms. Schroeder at the oil field. No sign of Ms. Schroeder at the mall, no witness in some place for that matter, at the oil field. Of course, mere prejudice is not enough to establish beyond a reasonable doubt, aiding and abetting, which requires active knowledge of the perpetrator's intent, sharing that intent, and taking some affirmative act to facilitate the commission of the crime. Everything else is accessory after the fact. Yes, she was traveling with Mr. Rowntree, excuse me, in the victim's car, she had the victim's property when they were So, what you're now arguing, aside from arguing the issue that we don't have a grant for the CLA on, is whether, is essentially that the concession had to have been relied upon, because otherwise there was nothing there. Absolutely, and that's why, even though the sufficiency of evidence has not been certified as an independent basis for relief, I think that analysis has to be imported into the prejudice analysis on the joint trial claim. Would it have been possible to get that concession in had she been tried separately? The only possible way that could have happened that I can think of, Your Honor, would be if Mr. Rowntree took the stance to be cross-examined about that, and I can imagine no circumstances, given the fact that he is pending his appeals, and will be for many years, that that could ever happen. There's certainly been no proffer by opposing counsel to indicate that that could ever happen. Would the spousal immunity have had any bearing on whether that could have been introduced against her? Both spousal immunity and the privilege for marital communications would come into play. The two co-defendants were legally married, that marriage has never been annulled, although there's been no communication between them, so if In addition to the confrontation problem. And that wouldn't have been true at the time of the trial, that is to say, they were married then too. Absolutely. And that's why I say that. So absent the joint trial, the juror is never going to hear that confession. Correct. Unless the state can give me some reason why they might have. That's correct. And again, acknowledging that the deficiency issue itself has not been certified, as we all know under the new circuit rule, at your discretion, that issue can be considered on its own merits, as well as the analysis considered as to prejudice of due process. And of course at this time the state is not yet briefed, and it would be given an opportunity to brief and so on and on. Of course, but since in my brief, your honor, I did specifically indicate that that entire argument was incorporated into the prejudice analysis on due process, they we're talking about, because this case arises under the ADPA, the ultimate question is whether the state court, in its rejection of this due process claim, unreasonably applied familiar Supreme Court law that holds that the standard is No, and here's my hard question in that regard. Richardson's still there. Has Richardson been undermined by Crawford? No, it has not. But again, my contention is not that there was a confrontation clause violation, which is the sole purview of Richardson. In this kind of a due process claim, very much like ineffective assistance of counsel claims that arrive under ADPA, the problem is that whether you call it due process or whether you call it confrontation clause, if everything else could have come in in a separate trial, the only possible prejudice due to the joint trial is the confession, which may be quite enormous, but which Richardson seems to deny is enormous, because it says that the limiting instructions and the rejection are sufficient. What I would posit are very unique circumstances of this case. The prejudice arises from the relationship between the confession, the state of the evidence against Ms. Schroeder, and the theory at trial that they were a unit. The fact of the relationship between Ms. Schroeder and her co-defendant was used to impute to her responsibility for all the acts that Rownsey admitted. In closing arguments, it says So, I'm essentially saying, and I'm just trying to get a hold of this, because I do find this all quite troublesome, but I find Richardson sort of sitting there as a five-year pamper Well, are you saying that this is different from Richardson in the likelihood that the limiting instruction and the rejection would suffice because of the relationship and because of the role of the relationship in the overall theory of the case? That is part of my argument, Your Honor. Richardson was an attempt to find a way around the Bruton Rule, which makes a co-defendant's confession inadmissible if it directly implicates another defendant who's being tried jointly. And what Richardson said was you avoid that confrontation problem by redacting all reference to the co-defendant. And if there is that complete redaction, then we can assume that the jury is able to follow the instruction to disregard against the co-defendant as to the confession. Now, that is a very narrowly cabined issue. It has only to do with use of the confession. But here we have a broader set of facts that are relevant. We have this problem that the Bruton Court recognized as very profound, of a jury's ability to set aside what one defendant has admitted to when confronted with an additional defendant. And we have facts above and beyond the confession itself, specifically the marriage, the relationship between the two, and the attribution by the plaintiff of responsibility for Roundtree's actions to Ms. Schroeder based on the fact that she was there. Now, it was a circumstantial case. But the circumstances showed that she had been with Mr. Roundtree prior to any of the California crimes, that she was with him afterward and did act as necessary. We conceded that. And that she was present at the oil field. There is not a single circumstance from which one can infer that it is more likely on the one hand that she was present at the oil field because she was helping in some way. The California Court of Appeals speculated that she had been, my client had been, monitoring in order to terrorize the victim and helping Schroeder to bring her there. That footprint could have been less had she been ordered out herself by Roundtree, had she left from the car to stop Roundtree, had the gun also been trained on her. I'm not suggesting that this evidence that these scenarios I'm targeting are true. I'm saying that there are no circumstances from which a jury could reasonably conclude that any of those circumstances were more likely than another. The circumstantial evidence against my client was, in fact, so sparse that it can't support any inference that she did any particular act to aid or vet anything. And the facts are so few and far between, either several days before or several days after, with the exception of the footprint, that the only way any action can be attributed to her is through leaps of inferential reasoning that simply are not supported. And the gap that was left by those leaps was filled by she was with him. The DA kept saying to the jury, do you really believe there's any other explanation? Don't you think, don't you think she was in on this? Don't you think, well yes, the circumstances certainly would raise suspicions in the mind of a reasonable juror, but that is far beyond a reasonable doubt. Help me if you can. I'm having the same problem that Judge Berzon is having with respect to Richardson. Yes. Richardson, in a nutshell, at least as I read it, says that you can have a brutal, compliant confession of a co-defendant coming in, and it can be used, even though it then can be used to tie evidence that's otherwise admissible to the non-confessing defendant, and it does not violate the confrontation clause. Is there something different about this case because of the style of privilege, because of the, I think, unless the State can educate me otherwise, her complete ability to keep that confession out for any testimony by that husband of hers, if she's tried separately, does that take it out from Richardson in some fashion? I think it does. Why? Because Richardson and Bluton are limited to the question of whether the co-defendant, the co-defendant's confession violates the other defendant's right of confrontation by directly implicating them. And we are saying that above and beyond any such confrontation clause problem, you have a context where these two are being tried not as co-defendants in a drug conspiracy or co-defendants simply in a robbery gone bad by, say, two male friends or a gang situation, but where the relationship was an intimate one, a sexual one. It turned into a marriage immediately after the offense. And in that context, the jury was invited in ways that I would submit rely on quite a lot of public stereotypes to attribute to the woman the conduct of her man. If I understood what Judge Fletcher said, I think I understand Richardson a little differently. Richardson does not allow the application of a confession to the co-defendant at all. No. So what you have to get over is you have to demonstrate that something about this trial undermines that supposition. I would have to do – I would have to undermine the Richardson supposition if my claim or confrontation – Fine. That's true. That's true. Because you need to demonstrate that there is something about this that is a due process clause violation. And if everything else could have come in a separate trial, ultimately what you have to demonstrate is that this confession was being attributed to her and that that was impromptu. The confession was attributed to her by the theory, we know he did it, he obviously did it, she was with him, so she must have done it. And therefore, you need to be saying that – and I'm not sure this is wrong, but I'm just trying to clarify what you're saying – you need to be saying that the That's absolutely correct. That is precisely my point. The redaction is sufficient only to prevent a narrow confrontation violation. What we have here is a much broader problem of a fundamentally unfair trial because my client, against whom the evidence was so weak, was tried together with a more culpable co-defendant, a co-defendant whose guilt was indisputable and who was linked to him by virtue of her relationship, despite the absence of evidence which could support any conclusion beyond the reasonable doubt that she aided and abetted. And I have only two minutes left, so I'd like to – Nothing to say, but we'll hear from the state. Good morning, Your Honor. Robert Whitlock, Deputy Attorney General for the State of California It seems I've prepared a long issue for argument. I was prepared to go on a venue issue, but counsel's chosen the other issue. I will not address the sufficiency issue because they were not certified for appealability. And one housekeeping matter. Regarding the record in this case, we received the appellate. I handled this case on direct appeal from the state court. And then when the case went to habeas, sent the entire file over to the district court, who I presume transmitted it to the Ninth Circuit. I don't have any other information on that, so I do apologize if you don't have the full record. If you don't, I can provide it. Okay, regarding the joinder issue and particularly Judge Fletcher's question, it's a good question. It wasn't litigated, the question of spousal privilege. And if I were to have to research that issue, I'd probably start with Harris v. New York and want to know whether or not the privilege would apply if a defendant confessed or a person confessed at a co-defendant's trial and was in the confession. But in any event here, because of Crawford, the supposition that the trial, that the confession could have come in the other trial is almost surely wrong. Because of Crawford, leaving the spousal privilege issue aside, aren't we in a somewhat different position as to whether this confession could have come in in a separate trial? Are you asking me is that a different issue? No, I'm asking you whether the supposition in some of the other cases that the prejudice is less than it might appear because the confession may well have been able to come in in a separate trial. We now know that it almost surely could not have come in in a separate trial. Is that not right? Arguably. I mean, the opposite of what I'm getting to is whether or not the, had Mr. Roundtree testified in her trial, assuming his trial would have gone first, and his trial would have gone second, would the prosecutor have been able to use Mr. Roundtree's confession to impeach him if he said anything that was inconsistent with what he said in his first confession? What you have to remember is in his original confession in this case, he did implicate Ms. Schroeder, the appellant. He implicated her as being a person who was at the scene when the victim was kidnapped. But that's the unredacted confession. That's not the confession that came in at trial. No, it's not. Right. And of course, when we talk about the redacted confession, here the Fifth District Court of Appeal, in deciding this case on appeal, pointed to that and said that there was absolutely no reference to Ms. Schroeder in that confession. The confession was just I, and nothing indicated to the jury that when Ms. Schroeder was, or when the confession was actually read to the jury through the police officer, that it meant we instead of I. But this is such a peculiar case. It's a different case from the ordinary co-defendant gender severance question, and it's a different case from the ordinary recruitment question because of the marital status here. And I'm trying to grapple with that and figure out how to deal with it. I think the marital status means that if she were tried separately, anything that Browntree might say against her, including simply the introduction of the confession, I think she's entitled to keep out simply on the basis of the marriage. I may be wrong on that, but I think so. Second, in the trial itself, as it took place, I understand that the confession is redacted so as to remove any reference to her, but a reasonable juror looking at a married couple where the man confesses and says nothing about the presence of a wife, I think is more likely in that circumstance to say, well, he's leaving out his wife because they're married. Instead of the ordinary situation where you've got three bank robbers or three cocaine dealers who, we all know that those guys are more likely to testify against one another than married couples. This comes out as a very unusual, it's not the usual root in a codependent case. This was an unusual case, and probably the biggest reason was because the defense put on absolutely no evidence at all, which is why I agree that the confession arguably would allow the jury to draw the inference that they were together from the time they left Missouri until the time they got to Kermit County. Except that you absolutely cannot rely on that, right? Because if they did rely on the confession to do that, then they were not obeying the instructions, and then we had a records problem or a burden problem. But I just said arguably they did. Well, arguably they did. Isn't that a problem that arguably they did? Isn't that a very problem that arguably they did? In fact, almost surely they did. Okay, but there was, I think what you have to do is go back to Richardson v. Marsh, which says, as the court has observed, that if a confession is properly redacted and the jury is properly instructed, which it was in this case twice, when the officer testified about the confession, just before that testimony was given, the jury was instructed not to infer anything from the confession as it related to the co-defendant's murderer. And then again, during your instructions, the jury was given the same instructions. But essentially what you've said here, and it was common sense that it's true, is that given the relationship between these people and given the context of this trial, the likelihood that any jury was obeying that rule was close to none. I mean, you didn't say that. I'm saying that. But you're saying, you said that it was arguably that they did. Well, that's true. But, you know, at a separate trial where he wasn't on trial, that same inference would have been drawn. Because the evidence of his involvement, I mean... But there would have been a huge failure, especially now after Crawford, to have his confession come in. Right. His confession was inadmissible. But the question remains was if he had, you know, if it was inadmissible at all. But then as the state court found, and this is, you know, the state court found there was no due process violation in applying federal precedent and found that there was sufficient circumstantial evidence apart from the confession that showed that she did commit the crime. I think it bears repeating that at the time, the victim... I must say that I found a lot of that evidence very hard to follow. There was a lot of... And I'm curious about it. There was a lot of reliance on the evidence that was... of the fact that there was a lot of physical evidence that Contreras was in the car. And that supposedly demonstrated that Stroder was keeping watch and that supposedly demonstrated that she was guilty of kidnapping. I don't get that. I don't understand it. Maybe you can explain it to me. I kept staring and saying, what are they saying? Well, I think to start with, that when they left Missouri, they left in her father's Golf car. No, no, I'm asking about that specific piece, the notion that all of the physical evidence showing that Contreras was in the car somehow ties up to Stroder and the kidnapping. Well, Stroder was in Stroder's car. I understand that, Your Honor. The Golf car was in her dad's car. I understand that, Your Honor. There was no evidence that she was anywhere else. There was no defense evidence to put on that she was anywhere else but in that vehicle. And probably one of the most incriminating items of evidence... So that's why. I'm serious. I just didn't understand it. The reason it ties up is just because Contreras was in the car and Stroder's car, therefore. Is that why? No, it showed that the victim actually rode in the Golf vehicle. And it doesn't show that Stroder was in the vehicle necessarily, but it does give the jury the inference, and the 50 CA found this, that the events occurring after the crime and the circumstantial evidence on the victim of blood and tissue, there's a sequence of events regarding the ATM transactions. The first transaction took place at 11.36 a.m., and that was a withdrawal of $100. Apparently, the ATM phone was not working at that time, so they didn't get that picture. But an hour and a half later, 90 minutes later, a picture, and it's people to give at 41 in this case, shows a male and a female sitting in a Golf making an ATM withdrawal with the victim's credit card. I mean, ATM card. It takes about 75 minutes, according to the officer, to drive from where the first ATM transaction was out to the place where the victim was murdered, and then back to the second ATM where they started withdrawing their sequence of money before they went to Las Vegas and got married and then got caught in Kansas in the victim's vehicle. And another item of evidence that the 50 CA thought was relevant, and it is, is that the victim's Social Security card was found inside the defendant's wall. When she was stopped, she was driving the victim's car. There was no explanation at all. Driving the victim's car, the murder weapon's under the backseat, or under a bag in the backseat. It's fully loaded. They've got the victim's identity in the front seat of the vehicle, in the center console, and then they're taken back and basically nothing more said except by round three. So as the 50 CA found in this case, there was sufficient circumstantial evidence, aside from the confession, to convict her of the murder. Now that goes to, in a way, to the point, this is not quite before us, that is to say, that we've not yet granted a COA on whether we will or not, and if we do not. There's sufficient evidence as it was actually introduced at trial. But even if the evidence as introduced at trial, as of the confession, was sufficient, which it might or might not have been, that's a different question from asking whether or not there was prejudice as a result of introducing the confession at trial. That is to say, merely because a jury could have, doesn't mean a jury would have. Exactly. And there's absolutely nothing in the record to show that the jury disregarded the jury instruction to disregard the confession. Except our common sense. We have a big cat with some stripes on it, but you were asked deliberately not to infer that this is a tiger. Well, I think the U.S. Supreme Court has said that the instruction, Well, the whole idea of confrontation and allowing the confession to come in against the co-defendant, in a case like this where the victim or the co-defendant is not specifically facially in the confession, that the action to eliminate any Go ahead. And I'll add a question to this. In Richardson, ultimately in Richardson, I believe there was a remand because of what, there was a notion that the prosecutor had actually undone the redaction by the way in which you argued in closing argument. And here, it seems to me, there's some of the, I don't have the whole closing argument, because I haven't been able to get hold of the record, but from what I can see in the closing argument, whoever argued it said things like that Ms. Stroda wants to be put in a little vacuum while all of this stuff is going on around her. Well, what stuff is going on around her if you don't know about the confession? And similarly, you have to ask yourself, is that reasonable? Is it reasonable for me based on the facts that you are aware of? He doesn't say the facts that you are allowed to consider, he says the facts that you are aware of. So, it seems to me that there was at least some implication to go ahead and Well, I think that's a danger in reading any argument out of context. Well, I am reading that out of context because I didn't have the context. So, tell me what's in the context. I did, but it's been a long time ago since I read it. And from what I can recall, what she did with respect to Stroda was she started with do not consider the confession against her. Now, here's the other evidence in this case, and she proceeded to show the transactions at the ATM and the fact that there was a male and a female in the car when that second transaction was made. The fact that Liz Stroda's, not that her shoe prints were there, but how likely is it that someone wearing a pair of shoes that aren't even sold in Kern County are wearing the same pair of shoes, wearing a pair of shoes that are consistent with tracks at the scene, one of which has a gouge taken out of it. And so the jury's going to say, well, you know, if I don't consider the confession, there's plenty of circumstantial evidence here that she was outside the car when, you know, when this victim was shot at that free time. Now, this is a really tricky case, and I'm having trouble getting my hands on it quite, because it comes up in this slightly unusual context. How can the jury not consider the confession, at least in the following sense? They know because of the confession what Roundtree did. Roundtree took her out to the oil field and shot her. They know that. They know some other things about Stroder. They know that Stroder was in the car previously. They know that this was her father's car that they took from Missouri. They know that there's an unidentified person along with Roundtree shortly after the murder that they may infer is Stroder. But how can they ignore what Roundtree has told them happened probably immediately before they come back and they do the second ATM withdrawal? I mean, they can't ignore it. That's asking them to hold two different obviously true things in their head at the same time and not put them together. So, Your Honor, you're referring to the mental gymnastics that jurors are not able to overcome. But I think in this case, because there's several reasons, and in a sense they can say don't use it against her, okay, I'm not using it against her, but I know it's true, and that enabled me to put a narrative together. And without that narrative, without that piece as to what happened out there in the oil field, I took her out to the oil field in that car and I shot her and I left her there. If you don't have that, all you have is she disappears from the parking lot, she's dead out of the oil field, we have a footprint, and then we have the ATM withdrawals and all the rest of it. But the narrative is singularly incomplete without that confession. I disagree, Your Honor. I think that this jury was capable of making the determination that she was guilty without consent. I mean, otherwise that would mean that they just ignored the instruction that was given to them to disregard the... So, what is the closing argument when it meant that she put herself in a little vacuum instead of suspending her animation while all the stuff was going on around her? What stuff was going on around her? What was in the confession? I don't know. I'd have to read the prosecutor's argument. But it sounds like what you're saying is what the inference department wants to draw, which is the victim's being killed. I don't think, you know, if you had a separate trial for Ms. Schroeder, would that mean that no evidence about what Roundtree did would come in? I mean, you have to have the victim whose body, she disappears from a shopping center. It would come in, but it couldn't, and almost surely. I mean, not surely, but almost surely it wouldn't come in from him. I'm sorry? It almost surely would not come in from him. So it would have to come in from someplace else. It would. It would. But there would be, and this, here again, we didn't get to that point in this case. So I wouldn't be speculating to say what the prosecutor would have done had the confession, or had they not been joining the trial. What's your view of the standard of proof or standard of showing required to demonstrate a due process violation? You know, it's an old criminal defense lawyer's trick to say every time the prosecution puts something in, that's prejudicial, Your Honor, and that's true. The prosecution is doing its job. Everything is prejudicial. But let's say that your opponent writes that we've never looked hard at this confession as a due process violation. What's the standard of showing the prejudice required in a due process violation to get a reversal? Your Honor, the only thing I saw about U.S. v. Lane, and that is that the defendant was denied or was subjected to a trial of gross unfairness. I think gross unfairness is really the key term here. And so there would have to be a gross unfairness. And here again, is it an unreasonable application of federal law for the Fifth District Court of Appeal and the California Supreme Court and the state court to determine that their due process rights were violated, despite the fact the confession came in? If the jury could make the determination without the confession, which the Fifth District Court of Appeal found that it could, and of course the California Supreme Court said that, then that's a reasonable application. She was not subjected to gross unfairness. But could is different from would. I'm sorry. But could is different from would. And they might not have had they not had the confession. I mean, you're arguing that a verdict, a guilty verdict, without the confession, based on the other evidence, would have been sustainable on appeal because a reasonable juror could have come to that conclusion. Yes. But that does not mean that a reasonable jury wouldn't have come to that conclusion. And if I were the prosecutor, I would quite like the devil to get that confession in because I wouldn't be confident that the jury without the confession would convict. Well, the basic reality is, as the courts have pointed out, joint trials versus separate trials and all the games that are played and people testifying that wouldn't normally testify. You know, I think the state law followed this. The Fifth District Court of Appeal, number one, said this is a classic case for doing this. And that, of course, there's a federal and state preference for joint trials. Because of all the problems Richardson v. Marsh brought up, which was, you know, the delays and different juries and the stresses of victims having to come back and testify numerous times, that type of thing. I don't think the U.S. Supreme Court in Richardson said that if we redact every confession that inferentially implies that a co-defendant did something, let's see, I'm losing my logic here. I think what they look at is the realities of life. They said this is a good halfway measure. What we do is we just say, we take, we redact it, we take out any reference to the co-defendant, and then we instruct the jury not to confess. As a practical matter, the likelihood that the jury was able to follow the instructions would depend on, at least, on how marginal the evidence otherwise was. It seems to me that this case, against Ms. Schroeder, without the confession, is at least a weak one, even if it's weak enough to get over, we're assuming that it's weak enough to get over Jackson v. Virginia Standard, and it may well be. But it certainly wasn't a whole lot there in terms of her participating in the kidnapping in particular, as opposed to being around before, being around after, even being there at the time, but actually participating. There's not much, if you would take out the confession. Right? So the Richardson, I don't know whether one can read Richardson to say it's always okay to do this, or it's okay to do it, when there's good reason to think the jury can follow the instructions, because they don't really, they can get through the evidence without it pretty well. I don't know if Richardson says that. I think, really, as I go back, and it's been a few months since I've read Richardson, but I recall it says that the reality is, by far, when you have these kinds of cases, it's better to redact the confession and instruct the jury not to consider it against the co-defendant than it is to sever these trials because of all the problems that raise it. There are joint trials in every case where you have this type of case. And, of course, nobody knew going in who was going to testify about where Ms. Furter was during all this. And the fact is, nobody presented any defensive evidence. And that, I'm not saying that the jury should consider that as proof that she did it, but they had absolutely nothing but the unrebutted prosecutor's evidence to try to come up with an answer in this case. And so, I think if you say, all right, well, just don't say anything, and then, of course, we'll get this case reversed later on, I don't think that's right. I think Richardson v. Marsh sets out the standard in this case, and I really went through that analysis fairly extensively in my brief. I see you have two minutes, 50 seconds. Thank you. This is a good time to wrap it up. Thank you. To start with Counsel's very last point, I would only point out that given the state of evidence against Ms. Stroder, even I, who have been known to bring habeas claims, some judges have called frivolous, would never argue that it was ineffective for Stroder's counsel to rely on the state of the evidence in seeking an acquittal here. The courts have recognized numerous contexts in which we cannot apply the standard presumption that the jury is capable of following the instructions. We have it in the Bruton situation. We have it in some cases of prejudicial publicity. We have it with joinder of claims, evidence of prior convictions, evidence of prior bad acts. And we don't have it here under Richardson. Under Richardson, you don't have it only as to the narrow confrontation claims. Richardson sets out a good workable rule for a garden-variety co-defendant case. The two guys who rock the limber floor together. It cannot be enough to guarantee due process in this case, where in addition to the threat of a confrontation problem, you have co-defendants who it is going to be virtually impossible for an average juror to separate because of the nature of the relationship between them, a prosecutorial theory that attributes to the admittedly less culpable defendant the conduct of a co-defendant based on that intimate relationship. The prosecutor repeatedly talks about they did this, they did that. Even opposing counsel has been scrupulous in trying not to do that. Used the word they a few times in his argument, as I'm sure the transcript of this proceeding will show. The jury was invited to think of the two as partners in crime, a phrase that the DA used in opposing arguments. And since I have so little time, I do have that transcript. And I'm prepared to discuss it point by point, but I think we don't have time for that. I want you to keep me up here well into the following case. Judge Fletcher mentioned earlier that the very fact that the concession left out any reference to the wife might make the jurors wonder about where the wife was in the statement and whether she was not being mentioned because of the marriage. It certainly seems to me, and this argument was not made by defense counsel, but jurors might have, I'm not going to say would have had to have, but jurors might have thought that the marriage in Las Vegas, immediately on the heels of a homicide, was something that Rountree insisted on, so it sort of couldn't testify against him. The prosecutor made the opposite argument, that he told the jury, you can infer from the fact of this marriage, despite the fact that the prosecutor's own witness said at the wedding chapel, she was depressed, she clung to Rountree, her head hung down, she did not speak. He handled the money. He asked for the ATM machine. He did all the transactions. Nonetheless, the prosecutor said, because she married him right after this happened, you can assume she was in on the whole thing. If she had been an innocent bystander, why would she have married him? That relies on so much speculation, unsupported by the record, that it violates due process. And Ms. Schroeder could not have had a fair trial, unless it was separate from her co-defendant, where all pronouns would be in the singular, rather than the plural. Thank you. Thank you very much. Thank you both, counsel, for, I thought, we thought, receiving a good argument on both sides. I'll say this, while students still have it after this one. The arguments in all these cases have been particularly good this morning, for which we thank you. The case of Schroeder v. Adams is now submitted. The last case on the calendar is Randolph v. People of the State of California.  All right. I think we've finished the exchange of people, so when you're ready, counsel. Thank you very much, Your Honor.
judges: Tg Nelson, W Fletcher, Berzon